## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

WILLIAM SCHULZE,
*On behalf of himself and all others similarly situated*,

        Plaintiff,

    v.

ZOOM TELEPHONICS, INC. and
MTRLC LLC,

        Defendants.

Case No. 1:20-cv-10140-IT

**Leave to File Granted on: April 3, 2020**

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff William Schulze, individually and on behalf of all others similarly situated, brings this class action complaint against defendants Zoom Telephonics, Inc. and MTRLC LLC. Plaintiff makes the following allegations upon personal knowledge as to his own acts and experiences, information and belief, and the investigation of counsel as to all other matters.

### NATURE OF THE ACTION

1. Plaintiff William Schulze purchased what he believed to be a brand-new Motorola-branded modem (MT7711) at a Best Buy in The Villages, Florida. Best Buy is an authorized retailer of Motorola-branded products but only markets these products as new, not used or refurbished.

2. Mr. Schulze reasonably believed that the modem was new. But in fact, unbeknownst to him, the manufacturer of the modem, Defendant Zoom Telephonics, Inc. ("Zoom"), and its wholly owned subsidiary, MTRLC LLC ("MTRLC"), sell used modems, or modems containing used materials and/or parts, disguised as new modems to unsuspecting buyers.

3. All modems possess unique serial numbers and unique Machine Access Control (MAC) addresses at the time of manufacture. The MAC address is expressed numerically and is digitally encoded within the hardware and is also placed along with the serial number on a sticker on

the equipment. The first six digits of Defendants' modems contain Zoom's organizationally unique identifier: 00-40-36. The other digits contained in the MAC number are unique to each device.

4.      Some modems contain more than one MAC number, but each MAC number is unique to the device to which it is assigned.

5.      Since each MAC number on a modem can only be used once, newly manufactured modems cannot have a MAC number that has been previously assigned to a different device. Thus, Mr. Schulze's modem was known or should have been known to Defendants as used or refurbished.

6.      The modem Mr. Schulze purchased was one of these used models disguised as new.

7.      When Mr. Schulze went to a Comcast store to activate the modem, he learned that the modem he had purchased was used and had already been registered for another user's account. The Comcast representative told Mr. Schulze that because the serial number and MAC number for the modem were registered to another user, it could not be activated for Mr. Schulze, and he could not use it.

8.      The Comcast representative further explained that this was a common phenomenon with Motorola modems marketed for Comcast Xfinity internet service.

9.      Mr. Schulze brings this action as a class action on behalf of individuals who purchased Defendants' Motorola-branded modems that were sold as new, but which in fact had MAC addresses that had already been registered to others, and are therefore unusable. He seeks compensation for himself and the other members of the putative class, as well as injunctive relief to stop Defendants from defrauding the public.

## PARTIES

10.      Plaintiff William Schulze is a natural person residing in The Villages, Florida.

11.      Defendant Zoom Telephonics, Inc., is a Delaware corporation with a principal place of business in Boston, Massachusetts.

12.      Defendant MTRLC LLC is a Delaware limited liability corporation with a principal place of business in Boston, Massachusetts.

## JURISDICTION AND VENUE

13.      This Court has subject matter jurisdiction because this is a class action, there is minimal diversity, and the matter in controversy exceeds $5,000,000 exclusive of interest and costs. 28 U.S.C. § 1332(d)(2).

14.      This Court has general personal jurisdiction over the Defendants because they have their principal places of business in this District.

15.      Venue is proper because the Defendants reside in this District. 28 U.S.C. § 1391(b)(1).

## FACTUAL ALLEGATIONS

**Defendants' Modem Business**

16.      In 2016, Zoom purchased the right to manufacture, market, and sell modems using the Motorola brand name. Since then, Defendants have marketed and sold models that are branded as Motorola.

17.      Zoom has one primary supplier, T&W, a Chinese company, that provides 99% of its inventory. As of 2018, modems represented 90% of Zoom's annual net sales.

18.      MTRLC is a wholly owned subsidiary of Zoom that focuses on the sale of Zoom's Motorola branded products. It is the exclusive producer of Motorola-branded cable modems and gateways.

19.      According to Zoom's SEC filings, assembly of Defendants' products typically occurs in China. Most of the material required to assemble Defendants' products are selected from a Zoom Telephonics Approved Vendor List and Parts List.

20.      Packaging of final products, however, typically occurs in facilities in North America. These North America facilities also perform warehouse, shipping, quality control, finishing, and

software updates.

**Defendants' Deceptive Practices**

21.     Defendants repackage and sell used modems, or modems containing used materials and/or parts as new modems.  Nothing on the packaging indicates that these modems are used, and they are sold alongside new modems by Defendants' authorized sellers with warranties. But because these used modems contain previously used MAC addresses that are already registered to other users' accounts, they cannot be used by the consumers who are deceived into buying them because they believe the modems are new.

22.     This practice is deceptive and causes consumers to buy products—used modems with previously used MAC addresses registered to others' accounts—that they would not otherwise buy.

23.     Indeed, the Federal Trade Commission Act has found that the fact that a product was previously used is a material fact relevant to the purchaser's decision to buy. Merchandise Which Has Been Subjected to Previous Use on Trial Basis and Subsequently Resold as New, Federal Trade Commission, 34 Fed. Reg. 176 (1969). Consequently, substituting a used product for a new one, without disclosing that fact, violates the FTC Act. *See, e.g.*, *In the Matter of Eastman Kodak Co.*, 81 F.T.C. 439 (Sept. 28, 1972).

24.     Defendants engage in this deceptive conduct even though they are well aware that used and refurbished modems present numerous problems to buyers. In fact, Defendants' own website warns customers that "used or refurbished devices may not work with your account because they are associated by your service provider with the account of a previous user."[1] Specifically, Defendants operate a website called "Motorola Mentor," which can be accessed by visiting

---

[1] Motorola Mentor, *Beware of used and refurbished cable modems and cable modem/routers* (Sept. 29, 2019), https://motorolamentor.zendesk.com/hc/en-us/articles/360006843114-Beware-of-used-and-Refurbished-Cable-Modems-and-Cable-Modem-Routers.

http://www.motorolanetwork.com/mentor. On that website, Defendants advise customers to buy "NEW products" instead of used or refurbished devices.

25.     Defendants also provide a limited warranty that applies to new modems. But the warranty is limited by its express terms to "the first consumer purchaser." Thus, the warranty does not apply to consumers who unknowingly purchase a used modem disguised as a new modem and provides no recourse for them.

**Mr. Schulze's Experience**

26.     On May 17, 2019, Mr. Schulze purchased what was marketed as and what he believed to be a brand-new Motorola-branded modem at Best Buy. The modem that Mr. Schulze selected was marketed for use with Comcast's Xfinity internet service.

27.     Mr. Schulze purchased a model MT7711 modem. He paid $233.24 for the modem, believing it to be a brand-new device.

28.     The modem was packaged as new and sold alongside other modems that appeared to be new. It was not labeled "used" or "refurbished." Nothing about the modem's packaging or labeling indicated that it might be anything other than brand new.

29.     The packaging of the modem stated that it came with a "Two Year Warranty."

30.     The modem came with the Cable Modem MAC number 0040365A82B7 (associated with the modem's cable internet capabilities) and the Multimedia Terminal Adapter MAC number 0040365A82B9 (associated with the modem's voice over IP capabilities). The modem's serial number was 0539-MT7711-1985.

31.     After purchasing the modem, Mr. Schulze went to a Comcast store to activate the modem.

32.     There, a Comcast representative informed Mr. Schulze that his modem had already been registered to another Comcast user. The Comcast representative told Mr. Schulze that because

the serial number and CM MAC number for the modem were registered to another user, it could not be activated for Mr. Schulze and he could not use it.

33.     The Comcast representative further explained that this was a common phenomenon with Motorola modems marketed for Comcast Xfinity internet service.

34.     Mr. Schulze obtained a printout from Comcast showing that the modem was already used. Before providing the printout, a Comcast representative blacked out the account number to which the modem was registered. Comcast would not provide Mr. Schulze with any information about the other user, or for how long the modem had been activated:



35.     Mr. Schulze's modem came with a written warranty that the modem is "free from defects in materials and workmanship under normal consumer usage for 2 years."

36.     Mr. Schulze would not have purchased the modem had he known that the modem was registered to another user and that he could not use it.

37.     Mr. Schulze ultimately purchased a different modem at substantial cost. He would not have needed to buy the second modem if the first one had worked as intended.

38.    Since Defendants disguise their modems as new when they are in fact used and registered to others, Mr. Schulze has no way of knowing whether modems he may purchase in the future are new or used. Mr. Schulze would purchase Defendants' modems in the future if he could be certain that they were new and not registered to another user.

## CLASS ACTION ALLEGATIONS

39.    Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

40.    The proposed class is defined as:

**Nationwide Class: All persons who purchased a modem manufactured or sold by Zoom Telephonics or MTRLC LLC.**

41.    In the alternative, Plaintiff seeks to represent the following state subclass:

**Alternative Florida Subclass: All persons in the State of Florida who purchased a modem manufactured or sold by Zoom Telephonics or MTRLC LLC.**

42.    The Nationwide Class and the Alternative Florida Subclass are referred to collectively herein as the "Class."

43.    Excluded from the Class are the Defendants; any entities in which they have a controlling interest; their agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

44.    Class members are identifiable through Comcast's records and payment databases.

45.    Plaintiff requests that he be appointed class representative.

46.    Plaintiff and the Class has all been harmed by the actions of Defendant.

47.    Numerosity is satisfied. Upon information and belief, there are numerous class members and individual joinder of these persons is impracticable.

48.    There are questions of law and fact common to Plaintiff and to the Class, including, but not limited to:

a.   Whether Zoom and MTRLC sell used modems that are packaged as new;

b.   Whether Defendants violated Mass. Gen. L. c. 93A by selling used modems, or modems containing used or refurbished parts, packaged as new;

c.   Whether Defendants violated the Florida Deceptive and Unfair Trade Practices Act by selling used modems, or modems containing used or refurbished parts, packaged as new;

d.   Whether Massachusetts law should apply to the claims of the class;

e.   Whether Plaintiff and the Class are entitled to actual damages as a result of Defendants' actions;

f.   Whether Plaintiff and the Class are entitled to double or treble damages as a result of Defendants' actions;

g.   Whether Plaintiff and the Class are entitled to statutory damages as a result of Defendants' actions; and

h.   Whether Plaintiff and the Class are entitled to attorneys' fees and costs.

49.   Plaintiff's claims are typical of the claims of the Class.

50.   Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other class members and he will fairly and adequately protect the interests of the Class members. Plaintiff has hired experienced and skilled counsel to protect the interests of the Class.

51.   Common questions of law and fact predominate over questions affecting only individual Class members. A class action is the superior method for fair and efficient adjudication of this controversy.

52.   The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

8

53.     Massachusetts law applies to the claims of all Class Members.

54.     The Commonwealth of Massachusetts has sufficient contacts to Defendants' relevant conduct for Massachusetts law to be uniformly applied to the claims of the Class (except for the Florida Subclass). Application of Massachusetts law to all relevant Class Member transactions comports with the Due Process Clause given the significant aggregation of contacts between Defendants' conduct and Massachusetts.

55.     Both Defendants are headquartered and do substantial business in Massachusetts.

56.     Class Members reside in Massachusetts and Defendants aimed a significant portion of their conduct at Massachusetts.

57.     The conduct that forms the basis for each Class Member's claims against Defendants emanated from Defendants' Massachusetts headquarters, including its decision to resell used modems as new.

58.     Massachusetts has a greater interest than any other state in applying its law to the claims at issue in this case. Massachusetts has a very strong interest in preventing its resident corporations from engaging in unfair and deceptive conduct and in ensuring that harm inflicted on resident consumers is redressed. Massachusetts's interest in preventing unlawful corporate behavior occurring in Massachusetts substantially outweighs any interest of any other state in denying recovery to its residents injured by out-of-state defendants or in applying its laws to conduct occurring outside its borders. If other states' laws were applied to Class Members' claims, Massachusetts's interest in deterring resident corporations from committing unfair and deceptive conduct would be impaired.

## COUNT I
### Violations of the Magnuson-Moss Federal Warranty Act
### On Behalf of Mr. Schulze and the Class

59.     Plaintiff incorporates and re-alleges the facts set forth in paragraphs 1 to 58 above.

60.     The modems sold by Defendants and purchased by Plaintiff and the Class Members

are "consumer products" as defined in 15 U.S.C. § 2301.

61.     Plaintiff and the other Class Members" are "consumers" as defined in 15 U.S.C. § 2301.

62.     Defendants are "suppliers" of the modems as defined in 15 U.S.C. § 2301.

63.     Defendants are "warrantors" of the modems as defined in 15 U.S.C. § 2301.

64.     Defendants supplied a "written warranty" regarding the modems purchased by Plaintiff and the Class Members as defined in 15 U.S.C. § 2301(6). Defendants warranted that their products would be free of defects and usable for their intended purposes.

65.     The warranties made by Defendants pertained to consumer products costing the consumers more than five dollars. 15 U.S.C. § 2302(e).

66.     As suppliers and in connection with the sale of the modems, Defendants made "implied warranties" arising under state law regarding the modems, as defined in 15 U.S.C. § 2301(7).

67.     Defendants violated the Magnuson-Moss Federal Warranty Act by failing to comply with the express and implied warranties it made to Plaintiff and the Class Members as set forth above.

68.     Specifically, Defendants made the following express warranties:

   a.  That the modems were new, not used or refurbished; and

   b.  That the modems were suitable for use in establishing an internet connection; and

   c.  That the modems were free of defects for 2 years.

69.     Defendants packaged their modems in the same packaging used for new products, which would lead reasonable consumers to believe that the modems were, in fact, new.

70.     Defendants directed their authorized retailers to place Defendants' modems for sale alongside new products, instead of in a separate section of the stores where used and refurbished products are sold, leading reasonable consumers to believe that the modems were, in fact, new.

71.     Defendants' representation that its modems were new was deceptive. Instead of

providing new modems, Defendants provided used modems, or modems containing used materials and/or parts, that were unusable to Plaintiff and the Class Members because they had been used.

72.     Plaintiff and the other Class members have sufficient direct dealings with either Defendant or its agents to establish privity of contract between Defendant, on one hand, and Plaintiff and each of the other Class members on the other hand.  Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third party beneficiaries of contracts between Defendant and their authorized sellers, and specifically, of Defendant's implied warranties.  The third-party authorized sellers were not intended to be the ultimate consumers of the modems and have no rights under the warranty agreements provided with the products; the warranty agreements were designed for and intended to benefit the consumers only.

73.     Affording Defendants a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.

74.     At the time of sale of each modem Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the modems' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defects. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resorts to an informal dispute resolution procedure under the MMWA and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

75.     Defendants knew and had notice that used modems were not usable by other consumers and could not be registered to new purchasers, yet sold them anyway. Defendants' failure to abide by their own written and implied warranties is an "unfair method of competition in or affecting commerce, and [are] unfair or deceptive acts or practices in or affecting commerce." *See* 15 U.S.C. §§ 2310(b), 45(a)(1).

76.     Defendants breached its warranties described above and is therefore liable to Plaintiff and the Class Members under 15 U.S.C. § 2310(d)(1).

77.     Plaintiff and the other Class Members sustained injuries and damages as a proximate result of Defendants' violation of these warranties and are entitled to legal and equitable relief, including damages, reasonable attorneys' fees and costs of suit, and other relief as appropriate.

**COUNT II**
**Breach of Express Warranty**
**On Behalf of Mr. Schulze and the Class**

78.     Plaintiff incorporates and re-alleges the facts set forth in paragraphs 1 to 58 above.

79.     Defendants are "merchants" as defined under the Uniform Commercial Code ("UCC").

80.     The Modems are "goods" as defined under the UCC.

81.     Defendants expressly warranted that the modems were new, would actually work properly, and were free of material defects.

82.     Defendant also expressly warranted that it would repair and/or replace defects in material and/or workmanship free of charge that occurred during the applicable warranty periods.

83.     Defendants breached their warranties by selling to Plaintiff and the Class members modems with a known defect, and which were not new, and which were predisposed to fail to function properly.

84.     These warranties formed the basis of the bargain that was reached when Plaintiff and other Class members purchased their modems

85.     As a result of Defendants' actions, Plaintiff and the Class members have suffered damages.

86.     Plaintiff and the Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's

conduct described herein.

**COUNT III**
**Breach of Implied Warranty**
**On Behalf of Mr. Schulze and the Class**

87. Plaintiff incorporates and re-alleges the facts set forth in paragraphs 1 to 58 above.

88. Mass. Gen. L. § 2-314 provides that "a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

89. Mass. Gen. L. § 2-315 provides that "where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods."

90. Defendants designed, developed, manufactured, distributed, and marketed its modems for purposes of sale to buyers. Plaintiff and the Class Members were the intended recipients of the modems, a fact plainly understood by Defendants.

91. Defendants impliedly warranted that their modems were properly designed, developed, tested, manufactured, distributed, marketed, and sold, and that the designs and materials were proper and of workmanlike quality.

92. Defendants knew and intended that their modems would be used by Plaintiff and the Class Members throughout the United States to establish internet connections in their homes.

93. Defendants intended that Plaintiff and the Class Members would be the beneficiaries of its warranties. Indeed, Plaintiff and the Class Members could not buy the modems directly from Defendants. Instead, they are required to purchase them through authorized retailers—further supporting Plaintiffs' and the Class Members' role as intended third-party beneficiaries of the warranties.

94. Defendants' used modems disguised as new modems are not merchantable because they are already registered to other users and unusable by Plaintiff and the Class Members and are

13

therefore unfit for the ordinary use of modems.

95.     Defendants' used modems disguised as new modems are not fit for their intended purpose because they are already registered to other users and cannot be used to establish internet connections for Plaintiff and the Class Members.

96.     Contrary to the applicable implied warranties, the used modems sold to Plaintiffs and the Class Members were not fit for their ordinary and intended purpose of providing Plaintiff and the Class Members with reliable modems.

97.     In selling used modems disguised as new to Plaintiff and the Class Members, Defendants breached their implied warranties with Plaintiff and the Class Members.

98.     But for Defendants' breach, Plaintiff and the Class Members would not have sustained damages by purchasing the used modems.

99.     As a direct and proximate result of the breach of said warranties, Plaintiff and the Class Members have suffered damages.

## COUNT IV
### Breach of Implied Contract
### On Behalf of Mr. Schulze and the Class

100.    Plaintiff incorporates and re-alleges the facts set forth in paragraphs 1 to 58 above.

101.    Defendants sold used modems to Plaintiffs and the Class Members, repackaged as new. In exchange, Defendants received benefits in the form of monetary payments.

102.    Defendants have acknowledged these benefits and accepted or retained them.

103.    Implicit in the exchange of the modems for monetary payments is an agreement that Defendants would provide modems suitable for their purpose—establishing internet connections—not modems that were used or contained used parts and were not usable by Plaintiff and the Class Members.

104.    Without such implied contracts, Plaintiff and the Class Members would not have paid

for and conferred benefits on Defendants, but rather would have chosen to purchase modems that they could use to connect to the internet.

105.     Plaintiff and the Class Members fully performed their obligations under their implied contracts with Defendants, but Defendants did not.

106.     Defendants breached their implied contracts with Plaintiff and the Class Members by selling them used modems disguised as new that could not be used by Plaintiff and the Class Members.

107.     These circumstances are such that it would be inequitable for Defendant to retain the benefits received.

108.     As a direct and proximate result of Defendants' breach of their implied contracts, Plaintiffs and the Class Members have suffered and will suffer injury.

**COUNT V**
**Unjust Enrichment**
**On Behalf of Mr. Schulze and the Class**

109.     Plaintiff incorporates and re-alleges the facts set forth in paragraphs 1 to 58 above.

110.     Plaintiff purchased a modem marketed and sold by Defendants as a new modem suitable for use with Comcast's Xfinity internet service.

111.     In fact, the modem marketed and sold by Defendants as new was used and had already been registered to another user. It was therefore not usable.

112.     Plaintiff believed, based on the packaging of the modem, that it was new. He paid more for the modem than he would have paid had he known that it was already registered to another user and could not be used with his internet service. Plaintiff would not have purchased the modem had he known the truth.

113.     Plaintiff and the Class members conferred a benefit (money) on Defendants when they paid for the modems that they believed to be new, but which were used and registered to other Comcast users and/or were used or contained used or refurbished parts.

114.    Defendants voluntarily accepted and retained the benefits (money) paid by Plaintiff and the Class members.

115.    Under the circumstances, it would be unjust to permit Defendants to retain the benefits conferred upon them by Plaintiff and the Class members.

**COUNT VI**
**Violation of Mass. Gen. L. c. 93A** *et seq.*
**On Behalf of Mr. Schulze and the Class**

116.    Plaintiff incorporates by reference each of the allegations set forth in paragraphs 1 to 58 above.

117.    Chapter 93A declares unlawful any "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. L. c. 93A § 2.

118.    Defendants' acts and practices described above were in and affected trade or commerce as defined under Mass. Gen. L. c. 93A.

119.    Plaintiff brings this claim as a consumer under Mass. Gen. L. c. 93A § 9.

120.    Defendants engaged in unfair and deceptive acts and practices in violation of Mass. Gen. L. c. 93A § 2 when they manufactured and sold used modems, or modems that contain previously used materials and/or parts, as new modems.

121.    Regulations promulgated under Chapter 93A provide that it is an unfair and deceptive trade practice to falsely represent, directly or indirectly, that a product is new or unused when it is not; to misrepresent the extent of previous use; and to sell or offer for sale any product that is used or contains used parts or is otherwise reconditioned or has the appearance of being new when it is not, without a prior clear and conspicuous disclosure. *See* 940 C.M.R. 3.15.

122.    Defendants did not include the required disclosures on their modems, thereby violating 940 C.M.R. 3.15 and c. 93A § 2. Acts or practices that fail to comply with regulations meant to protect the welfare of the public, like 940 C.M.R. 3.15, violate c. 03A. *See* 940 C.M.R. 3.16(3).

16

123.     Defendants' acts and practices also violate the Federal Trade Commission ("FTC") Act, which provides a separate basis for liability under c. 93A. *See* 940 C.M.R. 3.16(4). Under the FTC Act, failure to disclose material facts relevant to the decision to buy is unfair and deceptive. The fact that a product was previously used is a material fact relevant to a purchaser's decision to buy.

124.     Defendants' acts and practices are deceptive because ordinary consumers are likely to be misled, based on the packaging and Defendants' omission of this material information, into believing that used modems are new and usable when they are not. By disguising its modems as new, Defendants enticed Plaintiff and other Class members into purchasing goods they would not have otherwise purchased. *See* 940 C.M.R. 3.16(2). Defendants caused Plaintiff and the Class members to act differently than they would have otherwise.

125.     Defendants' acts and practices are unfair because they are immoral, unethical, oppressive, and unscrupulous, and caused injury to Mr. Schulze and other similarly situated persons. Their acts and practices were also unfair because they acted from a position of power relative to their customers, including Plaintiff and the Class.

126.     Plaintiff and the Class members were harmed by Defendants' acts and practices.

127.     Defendants' actions described above were knowing and willful violations of Mass. Gen. L. c. 93A § 2, entitling Plaintiff and the Class members to an award of double or treble damages.

128.     On January 23, 2020, before filing this First Amended Complaint, Plaintiff sent a written demand for relief to Defendants on behalf of himself and the Class. Although Defendants responded, their offer of settlement was not reasonable.

129.     Because of Defendants' unfair and deceptive acts and practices, Plaintiff, on behalf of himself and the Class, seeks actual damages, minimum statutory damages, double and treble damages, injunctive relief, and such other relief as the Court finds necessary and proper, as well as reasonable attorneys' fees and costs. Mass. Gen. L. c. 93A § 9(3).

**COUNT VII**
**Violation of the Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. §§ 501.201 *et seq.***
**On Behalf of Mr. Schulze and the Alternative Florida Subclass**

130.     Plaintiff incorporates and re-alleges the facts set forth in paragraphs 1 to 58 above.

131.     Plaintiff brings this claim in the alternative on behalf of himself and the Alternative Florida Class.

132.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

133.     Plaintiff is a "consumer" as defined by Fla. Stat. § 501.203(7).

134.     Defendants engaged in "trade or commerce" under Fla. Stat. § 501.203(8) when they sold modems for individual, household, and family use.

135.     Plaintiff purchased a modem marketed and sold by Defendants as a new modem suitable for use with Comcast's Xfinity internet service.

136.     In fact, the modem marketed and sold by Defendants as new was used and had already been registered to another user. It was therefore not usable. Selling this modem under these circumstances is deceptive and unfair.

137.     Plaintiff believed, based on the packaging of the modem, that it was new. He paid more for the modem than he would have paid had he known that it was already registered to another user and could not be used with his internet service. Plaintiff would not have purchased the modem had he known the truth.

138.     Defendants violated FDUTPA when they sold used modems packaged as new and thereby enticed Plaintiff and members of the Class to pay more for the modems than they would have otherwise.

139.     Defendants' practice of selling used modems, or modems that contain used materials and/or parts, packaged as new also violates FDUTPA because it is a violation of Section 5 of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45, which prohibits "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." Under the FTC Act, failure to disclose material facts relevant to a purchaser's decision to buy or not to buy is an unfair and deceptive practice.

140.     The FTC has found that "the consuming public has a preference for new or unused products as compared to those which have been previously used," such that the fact that a product was previously used is a material fact relevant to the purchaser's decision to buy. *See* Merchandise Which Has Been Subjected to Previous Use on Trial Basis and Subsequently Resold as New, Federal Trade Commission, 34 Fed. Reg. 176 (1969) [hereinafter "1969 Enforcement Policy"].

141.     Consequently, "substitution of a used product for a new one without disclosing such fact is unlawful even though a qualitative equivalence is shown." *Id. See also In the Matter of Eastman Kodak Co.*, 81 F.T.C. 439 (Sept. 28, 1972) (finding that "respondent's failure to disclose the material fact that photographic equipment . . . which had been repaired, refurbished and/or repackaged was used or may have been used has the tendency and capacity to mislead a substantial portion of the public into the erroneous and mistaken belief that such photographic equipment was new and into the purchase of such photographic equipment by reason of such erroneous and mistaken belief").

142.     When Defendants sold used modems repackaged as new modems, they failed to disclose the fact that the products were used—a material fact relevant to Plaintiff's and the Class Members' decision to buy. Defendants' practice of repackaging used modems as new and selling them as new has the tendency and capacity to mislead a substantial portion of the public—including Plaintiffs and the Class—into the erroneous and mistaken belief that such modems are new, and into the purchase of such modems. This conduct violated the FTC Act. *See* 1969 Enforcement Policy.

143.     Violations of the FTC Act also violate FDUTPA. *See* Fla. Stat. §§ 501.203(3)(a), (c); 501.204(2). By violating the FTC Act, Defendants violated FDUTPA.

144.     Plaintiff and the Class members were harmed when they purchased used modems sold as new.

145.     Since Defendants disguise their modems as new when they are in fact used, or contained used materials and/or parts, Plaintiff and the Class members have no way of knowing whether modems they purchase in the future are new or used. If Plaintiff could be certain that the modems are new, he would purchase another modem from Defendants in the future.

## JURY DEMAND AND RESERVATION OF PUNITIVE DAMAGES

146.     Plaintiff requests a jury trial on all issues so triable.

147.     Plaintiff reserves the right to amend his Complaint to add a claim for punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment against Defendants for all of the following:

1.     That the Class be certified pursuant to Fed. R. Civ. P. 23 and Plaintiff be appointed as Representative Plaintiff;

2.     That Plaintiff and the Class members be awarded restitution;

3.     That Plaintiff and the Class members be awarded actual damages;

4.     That Plaintiff and the Class members be awarded statutory damages;

5.     That Plaintiff and the Class members be awarded double or treble damages;

6.     That the Court enter an order enjoining Defendants and their agents from selling used modems, or modems containing used parts, as new;

7.     That Plaintiff and the Class members be awarded attorneys' fees and costs of suit; and

8.   Such other and further relief as the Court may deem just and proper.


DATED: April 3, 2020                              Respectfully submitted,

                                                    _/s// Hassan A. Zavareei_
                                                  Hassan A. Zavareei (*pro hac vice*)
                                                  Katherine M. Aizpuru (Mass. Bar No. 690383)
                                                  Tycko & Zavareei LLP
                                                  1828 L Street NW, Suite 1000
                                                  Washington, D.C. 20036
                                                  Phone: (202) 973-0900
                                                  Fax: (202) 973-0950
                                                  kaizpuru@tzlegal.com
                                                  hzavareei@tzlegal.com

                                                  Janet R. Varnell (*pro hac vice*)
                                                  Matthew Peterson (*pro hac vice*)
                                                  VARNELL & WARWICK, PA
                                                  P.O. Box 1870
                                                  Lady Lake, FL 32158-1870
                                                  P: 352-753-8600
                                                  F: 352-503-3301
                                                  jvarnell@varnellandwarwick.com
                                                  mpeterson@varnellandwarwick.com

                                                  Shannon McLin Carlyle (*pro hac vice*)
                                                  Florida Appeals
                                                  20 North Orange Avenue, Suite 1600
                                                  Orlando, FL 32801
                                                  Phone: 1-866-352-7732
                                                  scarlyle@floridaappeals.com
                                                  jtaylor@floridaappeals.com